318

Anita Davis *et al.*, Plaintiffs-Appellants, *v.* Retirement Board of Policemen's Annuity Fund of the City of Chicago, Defendant-Appellee.

(No. 60329;

First District (2nd Division)—June 24, 1975.

Block, Levy & Becker, of Chicago (Alvin R. Becker, of counsel), for appellants.

William R. Quinlan, Acting Corporation Counsel, of Chicago (Daniel Pascale and Robert R. Retke, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE HAYES delivered the opinion of the court:

Frederick Davis, a Chicago police officer and the husband of plaintiff-appellant (hereafter plaintiff), was killed in the line of duty on 14 December 1968. He left surviving two minor sons. Under the law in effect at the date of Davis' death (Ill. Rev. Stat. 1967, ch. 108½, art. 5: Policemen's Annuity and Benefit Fund—Cities over 500,000, par. 5—101 *et seq.*), both sons were entitled to, and did, receive a child's annuity in the amount of $40 a month (Ill. Rev. Stat. 1967, ch. 108½, pars. 5—151, 5—152). Subsequently, plaintiff filed a two-count complaint in the circuit court of Cook County, seeking to have the child's annuity payments increased based upon subsequent amendments to section 5—152 of the Illinois Pension Code, which amendments have more than doubled the 1968 amount of a child's annuity. Count I, in which plaintiff sought a declaratory judgment, was dismissed by the trial court on the grounds that the relief sought could be obtained only by administrative review. In Count II of the complaint, plaintiff sought review under the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*) of an order of the Board of Trustees of the Policemen's Annuity and Benefit Fund (hereafter Board) holding that Davis' two minor sons were not entitled to any increase in the amount of their child's annuity. The trial court upheld the action of the Board and plaintiff appeals.

Plaintiff's initial contention is that Davis' minor sons should be entitled to the increased child annuity benefits despite the fact that Officer Davis died prior to the effective date of any of the amendatory acts involved. Under the law in effect at the time Davis died leaving plaintiff as his surviving widow, his minor sons were entitled to a child's annuity in the amount of $40 a month (Ill. Rev. Stat. 1967, ch. 108½, par. 5—152). The

relevant amount of child's annuity was subsequently increased by successive amendments to the fourth paragraph of section 5—152 as follows: in 1969 to the sum of $60 a month (Ill. Rev. Stat. 1969, ch. 108½, par. 5—152); in 1971 to the sum of $60 a month until July 1, 1971, and thereafter to 10% of the policeman's final salary (Ill. Rev. Stat. 1971, ch. 108½, par. 5—152); and in 1972 to the sum of $60 per month until July 1, 1972, and thereafter to an amount equal to 10% of the salary attached to the classified civil service position of a first-class patrolman at the date of the policeman's death (Ill. Rev. Stat. 1973, ch. 108½,par. 5—152).

The first paragraph of section 5—152 provides in relevant part: "A child's annuity shall be payable in the following cases of policemen who die on or after the effective date: (a) A policeman whose death results from injury incurred in the performance of an act or acts of duty; (b) a policeman who dies in service from any cause * * *." (Ill. Rev. Stat. 1973, ch. 108½, par. 5–152.) Plaintiff urges this court to construe the term "effective date" in the above-quoted sentence to mean the date on which a municipality first became subject to the provisions of article 5 of the Illinois Pension Code. In support of such construction, plaintiff relies upon the statutory definition of "effective date" in the Act (Ill. Rev. Stat. 1973, ch. 108½, par. 5—107);

> "'Effective date': January 1, 1922, for any city covered by the 'Policeman's Annuity and Benefit Fund Act of the Illinois Municipal Code' on the date that this Article comes in effect; and January 1 of the year following the date that any other city first comes under the provisions of this Article."

Plaintiff contends that under this definition this court adopt her interpretation of the applicability of the successive amendatory acts to increase the amount of the child's annuity of each of the two minor sons of Officer Davis.

We agree that the terms "effective date" in the first paragraph of section 5—152 means the effective date of article 5 of the Illinois Pension Code. The difficulty is that the first paragraph of section 5—152 has nothing to do with the *amount* of the child's annuity. The first paragraph relates solely to the entitlement of a surviving child of a policeman to an annuity of whatever amount, and operates to add another entitlement requirement to the entitlement requirements provided in section 5—151.

The relevant *amount* of the annuity to which the qualifying child is entitled is provided solely in the fourth paragraph of section 5—152, and the subsequent amendatory acts providing increased amounts all do so by amending the said fourth paragraph.

The relevant amount is initially determined by first determining a specified circumstance as of the date of the death of a policeman who

comes within one of the four specified classes of policemen spelled out in the first paragraph. That circumstance is whether a widow does or does not survive the policeman as of the date of his death. Under the amount provisions in effect in 1968, if a widow survives, the initial amount of the child's annuity is $40 per month and the annuity remains at that amount while the widow continues to survive and while the child continues to be entitled. If no widow survives, the initial amount of the child's annuity is $60 per month and the annuity remains at that amount during the time that the child continues to be entitled. If a widow survives at the date of the death of a qualified policeman but then herself dies while the child is still entitled, then the amount of the child's annuity becomes $60 per month for the balance of the period for which the child remains entitled.

We conclude that, from the fact that the term "effective date" in the first paragraph means the effective date of article 5 of the Illinois Pension Code as per the definition in section 5—107, plaintiff can find no support for her contention that Officer Davis' minor sons are entitled to the increased child annuity amounts provided in the fourth paragraph by the subsequent successive amendatory acts.

Plaintiff's interpretation must rather depend on a contention that these subsequent amendatory acts do not express a legislative intent that the 1968 determination of the annuity amount shall be forever controlling as to Officer Davis' minor sons. The successive increases in the annuity amounts are not expressly restricted solely to cases in which the date of the death of the qualified policeman occurs after the effective date of the respective amendatory act. Plaintiff must contend that, when the date of the death of the qualified policeman is prior to the effective date of the amendatory act, then the determination of amount continues to be controlled by the circumstance existing at the said date of the policeman's death (namely, whether or not, at that date, a widow did or did not survive), but the increased amount is controlled by whether the widow who survived at the prior death date still survives at the effective date of the amendatory act or whether the said widow has since died during the child's minority and before the effective date of the amendatory act. It is not contended, of course, that the increased amounts are retroactive to the date of the existing child annuitant's initial entitlement, but simply that the increased amounts apply in future to child annuitants who exist on the effective date of the amendatory act as well as to children who thereafter first become child annuitants.

In support of this contention of plaintiff as to the legislative intent, we take judicial notice of the fact that when, in 1972, the legislature decided that existing police *widow* annuitants should not enjoy subsequent increases in the amount of the widow's annuity, the legislature expressly

so provided by adding a paragraph to that effect to the section dealing with maximum annuities for policemen and their widows. (Ill. Rev. Stat. 1973, ch. 108½, par. 5—148.) Since no comparable provision has been enacted in respect of existing police child annuitants, there is a negative inference that the legislature did not intend to exclude existing police child annuitants from enjoying the benefit of subsequent increased annuity amounts.

In opposition, the Board also relies on a negative inference. The Board calls our attention to the fact that, when the legislature intended existing child annuitants of deceased *firemen* to enjoy the benefits of subsequent increased child annuity amounts, the legislature expressly so provided (Ill. Rev. Stat. 1971, ch. 108½, par. 6—148), and no comparable provision has been enacted in respect of existing child annuitants of deceased policemen.

Examining the Board's negative inference in greater detail, we note that, until the comparable firemen's child annuity section (namely, section 6—148) was amended in 1970, the first paragraph of the section in relevant part read as follows:

"A child's annuity, shall be paid for the benefit of any unmarried child, less than age 18, of any following described firemen who die on or after the effective date: * * *." (Ill. Rev. Stat. 1969, ch. 108½, par. 6—148.)

The fourth paragraph of the section then provided the amount of the child's annuity.

By the 1970 amendment (P.A. 76—2579), the amount of the child's annuity was increased by appropriate changes in the fourth paragraph of the section and the legislature inserted into the said fourth paragraph a provision that the increased amount shall be paid "without regard to the fact that the death of the deceased fireman parent may have occurred prior to the effective date of this amendatory Act * * *."[1] To make the insertion meaningful, it must be assumed that the legislature thought that, without it, the existing child annuitant of a then deceased fireman would not, under the existing language of that fourth paragraph, receive the increased amounts, or, at least, that the legislative intent in that regard was ambiguous under the existing language.

In the 1971 and 1972 amendments to the comparable fourth paragraph

---

[1] In passing, we note that the same amendatory act which inserted the quoted language into the fourth paragraph of section 6—148 also deleted from the first paragraph the phrase "who die on or after the effective date". This deletion may indicate that the legislature thought that the deleted phrase referred to the effective date of the amendatory act rather than to the effective date of article 5 as per the definition in section 5—107.

of the comparable section of the Policemen's Annuity and Benefit Fund —Cities over 500,000 (namely, section 5—152, which is the section here involved), the legislature did not insert any provision comparable to the above-quoted inserted provision in section 6—148, and simply left unchanged the same language which the legislature thought it necessary to amplify in section 6—148. The negative inference is that the legislature did not intend existing child annuitants of then deceased policemen to receive the increased amounts and that the legislature thought that the existing language of the fourth paragraph of section 5—152 precluded them from receiving the increased amounts. Had the legislature intended the construction for which plaintiff is here contending, the legislature would have amended section 5—152 in the same manner in which it amended section 6—148. *Illinois-Indiana Cable Television Association v. Illinois Commerce Com.* (1973), 55 Ill.2d 205, 302 N.E.2d 334.

In further support of the Board's contention, we note that each successive increase in the amount of the policeman's child annuity is consistently related, though indirectly, to the date of the policeman's death. While not necessarily so, this fact is nevertheless some indication that the legislature had in mind deaths of policemen occurring in future after the effective date of the amendatory act.

In summary: (1) plaintiff's contention as to the meaning of the term "effective date" in the first paragraph of section 5—152, while correct, is irrelevant to her contention as to the applicability of subsequent increases in child annuity amounts to then existing policemen's child annuitants; (2) we take judicial notice that plaintiff's contention is supported by a negative inference from section 5—148 relating to existing police widow annuitants; (3) the Board's contention of inapplicability is supported by a negative inference from section 6—148 relating to existing child annuitants of then deceased firemen and by an inference arising from the fact that the successive amendatory acts increasing the policeman's child annuity amounts consistently, though indirectly, relate the increased amounts to the date of the death of the policeman.

■■ On administrative review, the function of the courts is to ascertain whether the findings and order of the administrative agency are supported by substantial evidence in the record and are not contrary to the manifest weight of the evidence. (*DeGrazio v. Civil Service Com.* (1964), 31 Ill.2d 482, 489, 202 N.E.2d 522; *Monroe v. Civil Service Com.* (1965), 55 Ill.App.2d 354, 360, 204 N.E.2d 486.) We hold, as did the trial court, that the Board's construction of the legislative intent manifested in the successive amendatory acts providing increased amounts of policeman's child annuities is supported by substantial evidence in the record and is not contrary to the manifest weight of the evidence.

■■ Plaintiff's second argument is that the statutory scheme which fixes the amount of a child's annuity for children of a deceased policeman at the amount set by statute at the date of the officer's death, but which provides for subsequent increased sums to children of deceased firemen without regard to the date of the fireman's death, violates due process and equal protection of the law. The rule has often been stated that the test for determining whether certain legislation violates equal protection of the law is whether the legislation in question operates equally upon all persons in the class to which it applies and not whether that class is treated the same as other classes. (*Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill.2d 323, 265 N.E.2d 640.) In the case at bar all children of deceased policemen are in one class while all children of deceased firemen are in another class. Since the legislation for each class operates equally upon all persons in the class, in that respect the legislation does not deny the plaintiff equal protection of the law.

It is within the discretion of the legislature to set up reasonable classifications of pension recipients, and the legislature may increase benefits payable to certain classes while leaving unchanged the amounts of other classes. (60 Am. Jur. 2d *Pensions and Retirement Funds* § 64 (1972).) Here, the legislature chose to exclude existing child annuitants of deceased policemen from increased child's annuity benefits afforded by subsequent amendments while extending increased benefits afforded by subsequent amendments to existing child annuitants of deceased firemen. The only remaining question is whether the separate classification of firemen and policemen is reasonable and valid.

■■ In setting up a pension plan for municipal employees, the legislature created completely separate statutory pension plans for policemen, for firemen, and for municipal employees other than policemen and firemen. The provisions of each of the three plans differ significantly. A statute is presumed to be valid and the burden is upon the party challenging the statute to establish its constitutional invalidity. (*Jaris v. Public School Teachers' Pension and Retirement Fund* (1974), 58 Ill.2d 15, 317 N.E.2d 51; *Livingston v. Ogilvie* (1969), 43 Ill.2d 9, 250 N.E.2d 138.) Judicial interference in the legislative function of establishing classifications is warranted only where the legislative action is clearly unreasonable. A classification will suffice as a basis for legislation if such classification is based upon a rational difference of situation or condition bound to exist in the persons or objects upon which the classification rests. *Gaca v. City of Chicago* (1952), 411 Ill. 146, 103 N.E.2d 617.

Courts of this state have often held that the risk attendant upon the duties of the police officer, the hours he is subject to call, and the general character of his services require special consideration. (*Gaca v. City of*

*Chicago* (1952), 411 Ill. 146, 103 N.E.2d 617.) Similarly, the duties of a fireman are of such a nature as also to require special consideration different from policemen and other municipal employees.[2] In light of the variety of duties and risks attendant upon the various occupations, we conclude that the legislative enactment of special provisions relating to pension funds for policemen, firemen, and for other municipal employees is not such as to deny plaintiff equal protection or due process of law. While we recognize the disparity of the treatment accorded to firemen's families and parents relative to those of policemen, we are bound by the principle that a legislative classification which has some reasonable basis is not unconstitutional merely because it is not made with mathematical nicety or because in practice it results in some inequality. *Morey v. Doud* (1957), 354 U.S. 457, 1 L.Ed.2d 1485, 77 S.Ct. 1344.

■■ Plaintiff, in her reply brief, for the first time argues that it was a denial of equal protection of the law to have the children of one police officer receive a set lesser amount because the officer died in 1968, while the children of another police officer, simply because he died in 1972, receive a larger amount. This point was not raised in plaintiff's initial brief, and has therefore been waived. Ill. Rev. Stat. 1973, ch. 110A, par. 341(e)(7); *Crane Construction Co. v. Symons Clamp & Manufacturing* (1962), 25 Ill.2d 521, 185 N.E.2d 139.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DOWNING, P. J., and STAMOS, J., concur.

---

[2] For example, Ill. Rev. Stat. 1973, ch. 108½, par. 6—151.1, is a provision, approved in 1967, affording firemen occupational disease disability benefits for which there is no counterpart for policemen or other municipal employees. As another example, Ill. Rev. Stat. 1973, ch. 108½, par. 6—149, is a provision, approved in 1971, affording an annuity, under certain limited circumstances, to the parents of firemen, for which there is no counterpart for policemen or other municipal employees.