632 A.2d 325

COMMONWEALTH of Pennsylvania

v.

Gregory Lee JORDAN, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 23, 1993.

Filed Oct. 19, 1993.

John Marshall, New Bethlehem, for appellant.

William M. Kern, Dist. Atty., Clarion, for Com., appellee.

Before CIRILLO, DEL SOLE and JOHNSON, JJ.

JOHNSON, Judge:

A jury convicted Gregory Lee Jordan of one count each of inmate possessing any weapon and inmate possessing an implement for escape, 18 Pa.C.S. § 5122(a)(2) and (3). The Honorable Paul B. Greiner, S.J., sentenced Jordan to serve a term of imprisonment of thirty (30) to sixty (60) months on the count of possessing weapons, and a concurrent sentence of six (6) to twelve (12) months on the charge of possessing implements for escape. On this direct appeal, we are asked to determine whether a hacksaw blade, broken in two pieces, is a weapon *per se*, for purposes of prosecution and conviction under Section 5122(a)(2), a first degree misdemeanor. We conclude that it is not and, accordingly, we reverse that conviction.

Jordan was an inmate at the Clarion County Jail. He persuaded a friend, Michele Johnson, to bring a pair of running shoes to him at the jail. Johnson obtained the shoes and a hacksaw blade. She broke the blade in half and concealed one half under the insole of each running shoe prior to taking them to the jail for delivery to Jordan. Acting on a tip, the jail officials conducted a search and discovered the two pieces of hacksaw blade concealed in one of the shoes. Hidden under the insole of the other shoe was a $100 bill which, at another time, had also been delivered by Johnson to Jordan during a jail visit by Johnson.

At trial, Johnson testified for the prosecution. She admitted to taking the hacksaw blade, bending it in half, breaking it and placing one half of the blade in each shoe. She testified that Jordan had asked her to "bring him the shoes and put a hacksaw blade in them for him to get out, to use to get out." Transcript of Proceedings, April 3, 1992 (N.T.), page 5.

The deputy warden, Stan Dolby, testified to discovering two hacksaw blades inside one shoe at the time of the search. He did not further describe the blades. A deputy sheriff, who had participated in the search, also testified to seeing two pieces of a hacksaw blade and believing that it looked like one blade that was broken into two pieces. A fourth witness,

Clarion County Sheriff Vern Smith, testified to observing a hacksaw blade that was in two pieces in one shoe, and what appeared to be money folded up in the other shoe. Sheriff Smith described the blades as "having the word NAPA stamped on them. And they are approximately ten inches in length total, which broken approximately half." *Id.* at 63.

Immediately after the discovery of the hacksaw blade pieces and the $100 bill in the running shoes, both the contraband and the shoes were turned over to Sheriff Smith and held as evidence for trial. There was no evidence that either the blades or the money were ever used, or attempted to be used, by Jordan between the time he received the goods from his friend, Michele Johnson, and the confiscation of the goods by the sheriff.

In considering whether Jordan was properly convicted of inmate possessing a weapon, we look first to the statute involved. In pertinent part, it provides:

§ 5122. **Weapons or implements for escape**

(a) **Offenses defined.—**

. . . .

(2) An inmate commits a misdemeanor of the first degree if he unlawfully procures, makes or otherwise provides himself with, or unlawfully has in his possession or under his control, any weapon.

. . . .

(b) **Definitions.—**

. . . .

(2) As used in this section the word "weapon" means any implement readily capable of lethal use and shall include any firearm, knife, dagger, razor, other cutting or stabbing implement or club, including any item which has been modified or adopted so that it can be used as a firearm, knife, dagger, razor, other cutting or stabbing implement, or club. . . .

To sustain a conviction on this charge, the Commonwealth must prove that Jordan (1) in violation of prison regulations

(2) possessed or had in his control (3) a weapon. There is no dispute on this appeal that Jordan violated prison regulations both in possessing the pieces of hacksaw blade and the $100 bill. The only issue to be resolved is whether the two pieces of a ten-inch hacksaw blade constitute, either singly or together, a weapon.

This Court has previously held that a hacksaw blade in a wooden frame is an implement for escape. *Commonwealth v. Jackson*, 281 Pa.Super. 310, 312, 422 A.2d 184, 185 (1980). In Jackson, we were called upon to decide whether the hacksaw blade was in the inmate's possession or under his control where it had been discovered by a corrections officer inside a locked locker inside the inmate's cell. The only keys to open the locker were in the possession of the accused inmate and the officer in charge of the cell block. We there assumed, without analysis, that the mounted hacksaw blade was an implement for escape and found the necessary control to sustain the conviction.

In deciding whether a hacksaw blade may be construed to be a weapon *per se* under § 5122(b)(2), above, we are mindful that the statute is penal in nature. Therefore, all of its provisions and its application must be strictly construed against the party seeking enforcement and in favor of the defendant. 1 Pa.C.S. § 1928(b)(1). *Commonwealth v. Dickerson*, 533 Pa. 294, 300, 621 A.2d 990, 993 (1993); *Commonwealth v. Harner*, 533 Pa. 14, 20, 617 A.2d 702, 705 (1992); *Commonwealth v. Baker*, 531 Pa. 541, 579, 614 A.2d 663, 682 (1992) (Cappy, J., concurring and dissenting); *Commonwealth v. Iafrate*, 527 Pa. 497, 501, 594 A.2d 293, 295 (1991). The statute defines "weapon" as "any implement readily capable of lethal use". It includes any "cutting or stabbing implement . . . which has been modified or adopted so that it can be used as a . . . knife, dagger, razor, [or] other cutting or stabbing implement . . ."

No testimony was presented on this prosecution to support a reasonable conclusion that the broken pieces of the hacksaw blade were "readily capable of lethal use" nor are we prepared to so conclude. Moreover, we can only understand the legisla-

ture to have been referring to the cutting or stabbing of human flesh in its reference to "other cutting or stabbing implement or club." While a hacksaw blade is, in fact, a cutting instrument, it is manufactured and designed to cut metal or other hard materials, not human flesh. Without any testimony or other evidence on this record to support a conclusion that the unmounted, five-inch pieces of hacksaw blade could readily have been used to kill some person, we will not assume that the contraband presented here qualifies, without more, as a weapon.

In *Commonwealth v. Hargrove*, 15 Pa.D. & C.3d 604 (1980), the distinguished trial judge, the Honorable Harold E. Sheely, was required to determine whether an eight and one-half inch long metal sink stem with a knob on one end should be found to be a weapon within the meaning of § 5122(b)(2). In that case, the defendant had testified that he removed the sink stem from his cell, attached a pair of undershorts to it and concealed it in his prison jumpsuit so that he could use it as a weapon. Judge Sheely reasoned, we believe correctly, that since the defendant testified that the implement had been created by himself as a weapon, the sole question for the jury was whether it met the Crimes Code definition of an "implement readily capable of lethal use." The court determined that a jury could reasonably conclude that a heavy metal sink stem could be used to club a person to death. Such a conclusion does not readily flow from the facts presented on this appeal.

We are inclined to follow the reasoning of our sister state, Illinois, which has considered a similar issue in *People v. Morissette*, 225 Ill.App.3d 1044, 168 Ill.Dec. 30, 589 N.E.2d 144 (1992). There, the inmate had been indicted for attempt (escape), unlawful possession of contraband, and unlawful possession of a weapon. On appeal from an order dismissing the indictment, the Appellate Court of Illinois, Fourth District, held that the mere allegation of possession of a hacksaw blade would not satisfy the requirements to charge unlawful possession of either contraband or weapon, where the relevant statute defined a weapon not specifically included in the

statutory list of items as "any other dangerous weapon or instrument of like character."

In refusing to find a hacksaw blade a dangerous weapon, the *Morissette* court stated:

Dangerous weapons are divided into two categories: weapons which are dangerous *per se* and those which become dangerous because of the way they are used. The trial court noted, for example, a firearm is a dangerous weapon *per se*, but a common object such as a fingernail clipper is not considered dangerous unless it is used with the point of the fingernail file, a part of the clipper, pressed against a victim's throat. The court did not consider a hacksaw blade, which is a common tool, to be dangerous *per se*, and in the absence of allegations of use which would make it a dangerous weapon, there was no criminal offense stated.

The State maintains that the purpose of the statute is to prohibit even the innocent possession of items that are likely to be hazardous in a penal setting. (*People v. Ryan* (1987), 117 Ill.2d 28, 32–33, 109 Ill.Dec. 162, 163, 509 N.E.2d 1001, 1002.) The State argues that a hacksaw blade is clearly likely to be hazardous in a penal setting and, contrary to the trial court's statements, is not a common tool in a prison.

In *Ryan*, the defendants were inmates at Menard Correctional Center and were charged with possession of homemade weapons fashioned from a metal rod and sharpened into what was described as a dagger, dirk or pick. One defendant was charged with possession of two homemade knives, each about seven inches long and made from pieces of Plexiglas. The supreme court noted that the informations in each case described the weapon that was found and characterized it as " 'a dangerous weapon or deadly instrument.' " The court found this to be sufficient notice of that element of the offense.

Here, however, the indictment did not describe the hacksaw or allege it was a dangerous weapon or deadly instrument. Thus, absent the allegations of such description or

use, an indictment listing a tool which is not dangerous *per se* is insufficient. The trial court properly dismissed count II of the indictment.

*Id.* 225 Ill.App.3d at 1048, 589 N.E.2d at 147, 168 Ill.Dec. at 33. (Citations omitted).

We believe the conclusion of the Illinois court, that a hacksaw blade becomes dangerous only because of the way it is used, is sound. And that danger must be a danger to person, and not to property. The jury could readily conclude that Jordan had every intention to use, or attempt to use, the broken pieces of hacksaw blade for purposes of effectuating an escape. However, we find nothing in the record to support a finding that the blades had any potential for, or were readily capable of, lethal use.

We do not intend to suggest that under no circumstances may a hacksaw blade be found to be a weapon under § 5122(b)(2). It is our conclusion, however, that on the specific facts of this case, where the pieces of hacksaw blade were discovered and confiscated from the running shoes of the defendant and there was no evidence presented that the blades were intended for anything other than as implements for escape, the conviction for inmate possessing a weapon cannot stand.

We reverse judgment of sentence on the count of inmate possessing a weapon, 18 Pa.C.S. § 5122(a)(2), while affirming the conviction on possessing implements for escape, 18 Pa.C.S. § 5122(a)(3).

Judgment of sentence *AFFIRMED* in part, *REVERSED* in part.